UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

YVETTE RUBERY, on behalf of herself and
all other employees similarly situated,

                          Plaintiff,

                                                   DECISION AND ORDER

                                                   04-CV-6337L

                      v.

BUTH-NA-BODHAIGE, INC.,


                          Defendant.
_____

      Plaintiff, Yvette Rubery ("Rubery"), commenced what purports to be a collective action against defendant Buth-Na-Bodhaige ("The Body Shop" or "defendant"), pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA") and New York Labor Law § 651(5)(c) for The Body Shop's failure to pay Rubery and other Body Shop managers overtime pay. Rubery claims that she often worked over 40 hours per week, but was not compensated at overtime pay (time and a half) because she and others were improperly classified by defendant as "exempt" employees under the FLSA.

      There are three motions pending: defendant's motion for summary judgment dismissing the complaint (Dkt. #27); plaintiff's cross-motion for partial summary judgment (Dkt. #48); and

defendant's motion to strike portions of plaintiff's affirmation and certain evidence submitted in support of partial summary judgment (Dkt. #57).[1]

The parties' claims relative their respective motions for summary judgment are straight-forward. Defendant contends that the complaint should be dismissed because plaintiff falls within the executive exemption of the FLSA. Defendant contends that it has demonstrated under the FLSA and controlling Department of Labor regulations that Rubery's primary job duties were management and that she supervised two or more employees. Rubery opposes the motion on the grounds that there are material issues of fact as to whether plaintiff's primary duties were managerial. Plaintiff also contends that the proof is clear that she did not supervise two or more employees and, therefore, plaintiff cross-moves for summary judgment as a matter of law as to that aspect of the case.

Defendant's motion is denied. I believe that there are material issues of fact as to whether plaintiff's primary job responsibilities were considered "management." As one court noted: "[D]eciding whether an employee is exempt must be a voyage through fact-bound waters. Although there are a great many stars of law to navigate by, the course turns on the facts of an employee's job duties." *Harris v. District of Columbia,* 741 F. Supp. 254, 259 (D.D.C. 1990).

Under the FLSA, employers must pay overtime for "employment in excess of [40 hours per week] at a rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C. § 207(a)(1). Certain types of employees, however, are exempt from the overtime requirements, including "any employee employed in a bona fide executive, administrative,

---

[1] The parties have agreed that other motions, including plaintiff's motion for notice of a collective action (Dkt. #18) and plaintiff's motion to certify state law claims as a class action pursuant to FED. R. CIV. P. 23 (Dkt. #33) should be held in abeyance until resolution of the above-referenced dispositive motions.

or professional capacity. . . ." *Id.* § 213(a)(1). Defendant contends that Rubery and others similarly situated were "executives" and exempt from the overtime requirements.

Regulations have been established to determine whether an employee fits within this exempt category. The parties agree that the so-called "short test" at 29 C.F.R. § 541.1(f) (2003) applies because that was a Regulation in effect at the time of plaintiff's employment.

Under this Regulation, an employee is deemed to be exempt from FLSA's overtime provision as an "executive" if:

1. She was compensated on a salary basis of not less than $250 per week;

2. Her "primary duty" consisted of "management of the enterprise . . . or of a . . . subdivision thereof."

3. Her work included the "customary and regular direction of the work of two or more other employees."

The parties agree that plaintiff met the salary requirement, but there is considerable disagreement about the other two requirements.

At the outset, it should be noted that the employer has the burden of demonstrating that it is entitled to the exemption. *See Corning Glass Works v. Brennan,* 417 U.S. 188, 196-97 (1974); *Martin v. Malcolm Pirney, Inc.,* 949 F.2d 611, 614 (2d Cir. 1991). Furthermore, the FLSA is a remedial statute, and its exemptions are to be construed narrowly against the employer. *See Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392 (1960). Moreover, in determining whether an employee is exempt, there must be an intensive inquiry into the facts of the particular case. *Wright v. Aargo Security Servs.,* No. 99 Civ. 9115, 2001 WL 91705, *10 (S.D.N.Y. Feb. 2, 2001).

With these standards in mind, I believe there are material issues of fact that must be resolved by a jury as to whether Rubery's primary duties were managerial or not. Regulations at 29 C.F.R. § 541.13 state that it may be taken as a "rule of thumb" that primary duty "means the major part or over 50%, of the employee's time." Furthermore, the Regulations list five factors to consider in determining whether the employee's primary duty is managerial: (1) the amount of time spent performing managerial duties; (2) the relative importance of the managerial duties as compared with other duties; (3) the frequency with which she exercised the discretionary power; (4) her relative freedom from supervision; and (5) the relationship between her salary and the wages paid to employees doing similar non-exempt work. 29 C.F.R. § 541.13. Regulations at 29 C.F.R. § 541.102 define what is meant by "managerial" duties, and list as examples interviewing and training employees, adjusting rates of pay and hours of work, and controlling the flow and distribution of materials, merchandise and supplies. 29 C.F.R. § 541.102(b).

Defendant claims here that plaintiff "ran the show" at her store at Eastview Mall, Victor, New York and was responsible for a variety of managerial functions, including training, coaching and developing other assistant managers. Defendant also claims that the district sales manager visited that store infrequently and that plaintiff's salary far exceeded those over whom she allegedly supervised.

Plaintiff, on the other hand, contends that she spent approximately 90% of her time performing mere selling duties which did not involve managerial work. Those selling duties involved the same activities as sales associates, who were the lowest employees at the store. Although Rubery acknowledged that she did scheduling and oversaw other employment matters, other lower level, non-exempt employees performed the same duties. In addition, plaintiff claims

she did not have ultimate discretion to resolve issues that arose in her store, including decisions to interview and fire employees. She was required to submit schedules and other matters to the district sales manager or area manager for review. Essentially, plaintiff contends that she was largely controlled by the district sales manager and the area manager located at a different mall.

In view of the above, I believe that defendant has failed to establish, as a matter of law, that Rubery's primary duty was management. There are facts which could lead to such a conclusion, but there are other facts that indicate the contrary. To some extent, issues of credibility may be involved in the final resolution of this issue. There are questions as to what plaintiff actually did during her workday and what type of independent authority she had. In sum, I think it is a question of fact for the jury as to whether plaintiff's primary job responsibilities could be considered managerial, thereby exempting her from the FLSA overtime requirements. *See Goldman v. RadioShack Corp.*, No. Civ.A. 03-0032, 2006 WL 336020, *4 (E.D.Pa. Jan. 23, 2006) (whether primary duty was management "is unquestionably a factual question for the jury to decide."); *Harris,* 741 F. Supp. at 259.

The parties also dispute whether Rubery customarily and regularly directed the work of two or more full-time employees. I find that this is a mixed question of law and fact.[2] *See Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709 (1986); *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 521 (2d Cir.1998); *Goldman*, 2006 WL 336020, at *4.

As a matter of law, I agree with plaintiff that the Regulations and case law provide that plaintiff must direct at least 80 hours of subordinate work a week to be exempt. *See* 29 C.F.R. §

---

[2] The parties did not directly address the issue, but apparently presumed that this is a question of law.

541.105(a) (2003) ("An employee will qualify as an 'executive' under § 541.1 only if he customarily and regularly supervises at least two full-time employees or the equivalent."); *Perez v. RadioShack Corp.*, 386 F.Supp.2d 979, 989 (N.D. Ill. 2005) ("the court defers to the regulations and case law, all of which suggest that the FLSA imposes a bright-line 80 hours per week subordinate supervision requirement in order for the executive exemption to apply."); *Herman v. Harmelech*, No. 93 C 3458, 2000 WL 420839, *7 (N.D.Ill. Apr.14, 2000) ("Sensibly, the Department of Labor has interpreted the 'equivalent' to two full-time employees as any combination of part-time employees collectively working at least 80 hours per week."); *see also Secretary of Labor v. Daylight Dairy Prods., Inc.*, 779 F.2d 784, 787 (1st Cir.1985) (80 hours of supervision was a "bright-line rule"), *disapproved on other grounds*, *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988).

Defendant's contention that employers are free to establish their own definition of what "full-time" means is unpersuasive. The interpretative opinions of the Department of Labor, upon which defendant relies, state only that a limited exception may exist where an industry (like banking or insurance) has an established workweek of 35 or 37½ hours. Defendant, however, has not shown that the retail industry, or its own stores for that matter, operate using a workweek of 35 or 37½ hours. Nor is there any evidence that "unusual circumstances" exist warranting departure from the general 80-hour rule. *See Goldman*, 2006 WL 336020, at *5 ("Unusual circumstances which would cause subordinate hours to fall below two full-time equivalents are defined in the case law as cutting costs to try to save a failing business or an industry which typically operates fewer hours a week such as banking."). Importantly, defendant has failed to supply any authority that a court construing the FLSA overtime provision has held that an executive who regularly directed the work of something less than 80 subordinate hours was exempt.

- 6 -

I also find that if plaintiff supervised 80 (or more) subordinate hours a week at least 80% of the time she worked for defendant, that would constitute "customary and regular" as a matter of law. I agree with the sound reasoning of the District Court in *Perez*, 386 F.Supp.2d at 990, that an 80% standard is consistent with the Regulations that define "customarily and regular" as "a frequency which must be greater than occasional but which, of course, may be less than constant." *See* 29 C.F.R. § 541.107(b) (2003). I also agree that this standard "should not render a management employee's exempt status vulnerable to employee turnover, or other employment variables." *Perez*, 386 F.Supp.2d at 990.

If the evidence demonstrates, however, that plaintiff's supervision of 80 subordinate hours occurred less than 80% of the time, then the jury should decide whether that frequency constitutes "customary and regular." *See Jackson v. Go-Tane Services, Inc.*, No. 99 C 5686, 2000 WL 796172 (N.D. Ill. June 15, 2000), *aff'd* 56 Fed.Appx. 267 (7th Cir. Jan. 21, 2003) (holding that issues of fact precluded summary judgment regarding whether an employee "customarily and regularly" supervised two or more employees); *see also Goldman*, 2006 WL 336020, at *4 (rejecting plaintiff's contention that the issue, which was submitted to the jury for determination, was one that should have been decided as a matter of law by the Court). Further, I reject plaintiff's invitation to decide as a matter of law whether a particular frequency, such as the 69% figure she submits, falls short of what is "customary and regular." The law on this issue is unsettled. *Compare Daylight Dairy Prods.*, 779 F.2d at 787-88 (76% "falls short of 'regular and customary' supervision of 80 hours of work."),

*with Kastor v. Sam's Wholesale Club*, 131 F.Supp.2d 862, 869 (N.D.Tex. 2001) (holding that 70-75% met the "customary and regular" standard).[3]

Applying these standards to the case at bar, I find that summary judgment should be denied at this time because there are material issues of fact regarding the actual number of subordinate hours plaintiff supervised each week. Defendant maintains, based on the affidavit and report of its expert, Bernard R. Siskin, Ph.D, that plaintiff supervised 80 or more subordinate hours in approximately 133 out of 159 weeks she worked for defendant. Plaintiff disputes this figure and claims that she supervised 80 or more subordinate hours in only 110 out of 158 weeks.[4] (Dkt. #51, Ex. A).

The information concerning supervised hours, filed by plaintiff, however, was not prepared based on plaintiff's personal knowledge. Plaintiff received a chart from defendant's counsel prior to formal discovery. The chart contains different hours information from that which defendant filed in support of its summary judgment motion. Plaintiff has never reviewed, or had analyzed by an expert, the raw data concerning hours from the Eastview Mall store where she worked. This has

---

[3] In *Jackson*, the Court held after a bench trial that plaintiff was not exempt because he supervised 80 or more employee hours a week only 67% of the time. In an unreported decision affirming the District Court's ultimate determination that plaintiff was not exempt because the second prong of the "short test" was not met, the Seventh Circuit Court of Appeals stated *in dicta* that a frequency of 67% "falls short of the 'regular and customary' supervision of two full-time employees that is required under [29 C.F.R. §] 241.1(f)." *See Jackson v. Go-Tane Services, Inc.*, 56 Fed.Appx. 267, 272, n.8 (7th Cir. Jan. 21, 2003).

[4] The parties have not even agreed on the exact number of weeks (158 or 159) that plaintiff worked for defendant.

been the subject of an ongoing discovery dispute between parties, and was the partial basis for a motion to compel plaintiff brought against defendant. (Dkt. #23).[5]

Moreover, defendant objects to plaintiff's reliance on what it characterizes as an "unauthenticated" chart, and has moved to strike it from the record. Defendant argues, *inter alia*, that the information was disclosed to plaintiff during the course of settlement discussions and, consequently, is inadmissible under Federal Rules of Evidence 408. I agree with defendant and grant the motion to strike.

Rule 408(a)(2) provides that "statements made in compromise negotiations" regarding a disputed claim are not admissible when offered to prove liability for that claim. It is clear that the chart, which apparently was prepared by a paralegal in defendant's counsel's office, was sent to plaintiff during the course of settlement negotiations between the parties. In fact, just one day before plaintiff received this information from defendant, Magistrate Judge Feldman entered an Order that, *inter alia*, tolled certain limitations periods so that the parties could attempt to "*come to a resolution* of the claims in the Amended Complaint." (Dkt. #7, emphasis supplied). The Order further provides that the tolling period would end within a certain number of days "if the case is not resolved through *settlement*."

Under these circumstances, I find unconvincing plaintiff's contention that the chart does not fall within the purview of Rule 408. Accordingly, the chart is stricken from the record. *See Victor G. Reiling Associates and Design Innovation, Inc. v. Fisher-Price, Inc.*, 407 F.Supp.2d 401 (D.Conn. Jan. 10, 2006) (granting motion to preclude evidence consisting of, *inter alia*, statements made by

---

[5] Magistrate Judge Jonathan W. Feldman ordered the motion to compel withdrawn without prejudice to renew after resolution of the parties' motions for summary judgment. (Dkt. #71).

defendant during meetings held to negotiate a potential settlement of the case); *Honeywell, Inc. v. J.P. Maguire Co., Inc.*, 93 Civ. 5253, 1999 WL 102762, *24 (S.D.N.Y. Feb. 24, 1999) (finding inadmissible defendant's calculation of the balance still owed on a contract that was prepared for a court-ordered settlement between the parties); *see also Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 510 (2d Cir.1989).

The only information, then, regarding the number of subordinate hours plaintiff supervised is that provided by defendant's expert, Mr. Siskin. In light of discovery issues that remain regarding plaintiff's entitlement to the underlying data on which his conclusions are based, summary judgment is inappropriate.[6]

Moreover, there are other disputed issues regarding whether to include a subordinate's paid leave time or lunch breaks as part of the hours "supervised" by plaintiff when determining her exempt status. Plaintiff argues that lunch breaks and paid leave time should be excluded from the subordinate hours because, logically, Rubery is not "supervising" employees who were on vacation or on a lunch break. Without much explanation or reasoning, defendant argues that the paid leave time taken by Rubery's subordinates should be included. Defendant cites *Perez*, the only reported

---

[6] There also appears to be a factual dispute regarding the defendant's decision to change Rubery's status to non-exempt in July, 2003, and whether that decision was based on a decrease in the number of subordinate hours supervised. At the hearing on the parties' motions, defendant maintained that it reclassified plaintiff as exempt because the number of subordinate hours in the region in which plaintiff worked had declined to a degree that managers in this region no longer "customarily and regularly" supervised two or more full-time employees. Defendant also claimed that the change was evidence of its good faith compliance with the FLSA. Information regarding the number of subordinate hours after plaintiff's exempt status changed, however, was not made part of the record. There is no evidence, then, to support defendant's contention. If, in fact, the data showed that the subordinate hours remained the same both before and after plaintiff's reclassification, quite a different conclusion could be drawn.

case that appears to have discussed this issue. There does not appear to be a Regulation that speaks to these narrow issues.

In *Perez*, 386 F.Supp.2d at 987, the District Court concluded that non-working scheduled hours, such as lunch breaks, should not be included when calculating the number of hours a subordinate works during a particular week. The Court expressed its concern that "such an approach invites manipulation by employers in the form of long (unpaid) lunch breaks and/or the practice of routinely sending workers scheduled to work a full eight-hour day home early." *Id.* at 987 n.7.

In a subsequently reported decision in *Perez*, at 2006 WL 931732 (N.D. Ill. Apr. 6, 2006), Magistrate Judge Nan R. Nolan determined that paid benefit hours (*i.e.* paid vacations, sick time, and personal time), should be included in the calculation of subordinate hours so long as that time did not exceed four weeks. Magistrate Judge Nolan concluded that paid leave time was not subject to the same potential employer manipulation as scheduled unpaid lunch breaks.

I conclude that these issues cannot be decided at this time on the present record. The determination by the *Perez* Court concerning these issues appears to be based, in part, on the particular conditions under which defendant RadioShack's managers supervised their subordinates. For instance, the District Court concluded that "defendant's argument regarding the inclusion of lunch breaks might have been more compelling if there were evidence that large numbers of its employees were regularly scheduled to work 40 hours per week with a 30 minute unpaid lunch break. The court is uncomfortable adopting a 'scheduled hours' approach where employees are scheduled to work less than 40 hours a week *before* deducting unpaid lunch breaks." *Perez*, 386 F.Supp.2d at 987 n.7.

Although the Court may have to decide these issues as a matter of law, there is an insufficient basis on which to make that determination today. Defendant's expert, Bernard Siskin, Ph.D., has offered evidence as to the number of subordinate hours plaintiff supervised, both including and excluding lunch breaks and paid leave time. Nevertheless, he offers no explanation as to why the Court should include these hours under the circumstances of this case. Siskin states that he is the "Director and Head of the Labor Practice Unit of LECG, Inc., a national and international economic and financial consulting firm," and that he has over thirty years experience "in the application of statistics in analyzing employment practices." (Dkt. #31, ¶2). Presumably, he (and perhaps any expert plaintiff may retain) would have an opinion about whether, in his field of work, it is customary to include paid or unpaid time. One could argue that the *Perez* court's decision is somewhat inconsistent since it came to different conclusions as to unpaid lunch breaks and paid leave. There may be certain policy considerations or practices used when analyzing employment statistics that could assist the Court in deciding how to consider these hours in the context of this case. Although I find somewhat persuasive the *Perez* Court's reasoning, especially as it relates to lunch breaks, I am not prepared to rule on these questions at this time.

## CONCLUSION

Defendant's motion for summary judgment (Dkt. #27) is DENIED.

Plaintiff's motion for partial summary judgment (Dkt. #48) is DENIED.

Defendant's motion to strike inadmissable evidence (Dkt. #57) is GRANTED, in part.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       January 23, 2007.