## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

—————————————————————————

**YVETTE RUBERY,**                                )
                                                  )
                                                  )
                             *Plaintiff,*         )
                                                  )          **Civil Action No. 04-CV-6337(L)(F)**
     **v.**                                       )
                                                  )
**BUTH-NA-BODHAIGE, INC.,**                       )
                                                  )
                             *Defendant.*         )
—————————————————————————  )

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## MOTION TO STRIKE OPT-INS RESULTING FROM IMPROPER NOTICE

Jerauld E. Brydges, Esq.
HARTER SECREST & EMERY LLP
1600 Bausch & Lomb Place
Rochester, NY 14604-2711
(585) 232-6500

Kerry Alan Scanlon, Esq.
KAYE SCHOLER LLP
901 Fifteenth St., NW, Suite 1100
Washington, DC 20005
(202) 682-3500

Attorneys for Defendant

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    I.      Plaintiff and Her Counsel Misappropriated Confidential
          Information, Which Should Be Remedied By Striking the Opt-Ins . . . . . . . . . . 5

    II.     The Notice Sent to Shop Managers Is Misleading, Inaccurate and Deceptive . . . 8

    III.    Plaintiff's Counsel Improperly Sent Out a Misleading Notice
          Without Approval from the Court or Review By Opposing Counsel . . . . . . . . . 12

          A.     This Court Required Plaintiff's Counsel To Obtain
                Approval of the Collective Action Prior to Issuing Notice . . . . . . . . . . 12

          B.     Plaintiff's Counsel Requested Judicial Approval . . . . . . . . . . . . . . . . . . 13

          C.     Prior Review of the Notice Does Not Unduly Constrain
                Communication with Putative Collective Action Members . . . . . . . . . . 15

IV.    The Numerous Instances of Improper Conduct by Plaintiff's Counsel Merit
       Equally Serious Remedies from this Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# TABLE OF AUTHORITIES

## FEDERAL CASES

Baldwin v. Trailer Inns, Inc., 266 F.3d 1104 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . 9

Conn. Office of Prot. & Advocacy for Persons with Disabilities v. Hartford
Bd. of Edu.,
464 F.3d 229 (2d. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Delta Air Lines, Inc. v. August,
    450 U.S. 346 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Donovan v. Burger King Corp.,
    675 F.2d 516 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

FMC Corp. v. Taiwan Tainan Giant Indus. Co.,
    730 F.2d 61 (2d Cir. 1984)  (injunction) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Glewwe v. Eastman Kodak Co.,
    No. 05-6462, 2006 U.S. Dist. LEXIS 33449, 2006 WL. 1455476
    (W.D.N.Y. May 25, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Heitmann v. City of Chicago,
    04-3304, 2004 U.S. Dist. LEXIS 14669, 2004 WL. 1718420
    (N.D. Ill. July 30, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Hoffman-La Roche v. Sperling,
    493 U.S. 165 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Kastor v. Sam's Wholesale Club,
    131 F. Supp. 2d 862, 866-67 (N.D. Tex. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Letouzel v. Eastman Kodak Co.,
    No. 05-6464, 2006 U.S. Dist. LEXIS 33453, 2006 WL. 1455478
    (W.D.N.Y. May 25, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Lyons v. Cunningham,
    583 F. Supp. 1147 (S.D.N.Y. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Monovis, Inc. v. Aquino,
    905 F. Supp. 1205 (W.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Shapero v. Kentucky,
    486 U.S. 466 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

Threatt v. Residential CRF, Inc.,
    No. 05-117, 2005 U.S. Dist. LEXIS 22509, 2005 WL. 2454164
    (N.D. Ind. Oct. 4, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

Woods v. New York Life Insurance Co.,
    686 F.2d 578 (7th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

## STATE CASES

Potter v. Hilemn Labs, Inc.,
    150 N.C. App. 326 (N.C. App. 2002)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

Willis of New York, Inc. v. DeFelice,
    299 A.D.2d 240 (N.Y. App. Div. 2002)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

## FEDERAL STATUTES

29 C.F.R. §541.103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. 68 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

Fed. R. Civ. P. 68, Advisory Committee Notes, 1946 Amendment  . . . . . . . . . . . . . . .  11

## STATE STATUTES

N.C. Gen. Stat. § 66-154 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

## PRELIMINARY STATEMENT

One of the principal arguments plaintiff makes in opposition to the motion to dismiss is that several dozen shop managers sought to opt into this case beginning on March 23, 2007, and that the claims of these putative plaintiffs are not moot. However, the first of these attempted opt-ins was not filed until more than three weeks after a fully compensable offer of judgment was made to the plaintiff, at which point the Court had lost subject matter jurisdiction of this matter and the only claim in the case, that of Yvette Rubery, had became moot. Moreover, the late opt-ins were the direct result of en masse notices from plaintiff's counsel that were not only misleading, inaccurate and deceptive, but were sent to shop managers whose names were improperly obtained from confidential company documents. These notices were not even sent out until after the offer of judgment had resolved the only justiciable controversy in the case. For these reasons, The Body Shop now asks the Court to find that the opt-ins were both late[1] and obtained in an improper manner, and cannot provide grounds for keeping this fully resolved case alive.

The Supreme Court itself nearly two decades ago cautioned that misleading communications to potential participants in a Fair Labor Standards Act collective action interfere with recipients' ability to make properly informed decisions, and therefore represented a "misuse of the class device." Hoffman-La Roche v. Sperling, 493 U.S. 165, 171 (1989). The Supreme Court recognized the benefit of judicial supervision of the notice process as a way of protecting all the parties, and it likewise recognized that courts should "cancel consents obtained in an

---

[1]     Defendant has separately briefed the mootness issue in its motion to dismiss, see Dkt. # 76, and in its reply brief in support of that motion filed on this date.

improper manner." <u>Id.</u> at 172.  All of the opt-ins in the present matter must be stricken or

disregarded because plaintiff's counsel acted improperly when they (1) misappropriated a

confidential company document to obtain the names and home addresses of shop managers; (2)

sent out, <u>en masse</u>, misleading and deceptive notices to shop managers; and (3) simultaneously

renewed their request for court approval and issued unapproved notices <u>en masse</u> on the same

day.

**<u>FACTS</u>**

Plaintiff Yvette Rubery worked as the shop manager at the Eastview Mall store of

The Body Shop, located in Victor, New York, from June 1996 until she resigned on March 13,

2004.  On July 7, 2004, Rubery initiated this lawsuit under the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 216(b), and New York's Labor Law.  For the first two years and eight

months of this litigation, no other shop manager in New York or elsewhere expressed interest in

joining this lawsuit.  A year and a half after filing this lawsuit, on December 16, 2005, Rubery

filed a Motion to Certify Class for Expedited Notice to Affected Employees, requesting Court

approval of a notice to potentially affected employees.  Dkt. # 19.  The Body Shop filed a

response, pointing out, <u>inter alia</u>, numerous inaccuracies in the proposed notice.  Dkt. # 38.  At

the parties' joint request, however, the Court agreed to defer ruling on the motion pending a

decision on the cross motions for summary judgment.

The Court ruled on the summary judgment motions on January 23, 2007.  On

March 16, 2007, plaintiff sent a letter to the Court to renew its request for judicial approval of its

notices.  <u>See</u> Declaration of Kerry Alan Scanlon (Scanlon Decl.) Exhibit F (March 16, 2007

letter from Patrick J. Solomon to Judge Feldman).  On the same day that plaintiff's counsel

2

requested judicial approval of their notice, they sent out unapproved notices to hundreds of shop managers.  The unapproved notices were sent to shop managers, both at store addresses and at home addresses.  See Declaration of Donna McClellan (McClellan Decl.) ¶ 8.  Some shop managers reported receiving two or three written notices in addition to multiple telephone calls from the law firm representing the plaintiff.  See id.  Plaintiff's counsel did not notify the Court or defense counsel that it had embarked on a mass mailing of notices, and did not wait for the Court's response to its request to send out such notices.  As a result, defendant's counsel had no opportunity to correct numerous misleading and deceptive statements contained in the notice.

The timing of plaintiff's notices on March 16 was not coincidental.  On February 27, 2007, defendant had extended an offer of judgment to plaintiff – which fully compensated her for any relief which she could have obtained on her FLSA claims after a trial.  See Scanlon Decl. Exhibit E (Feb. 27, 2007 Offer of Judgment).  At that time, not a single other shop manager had expressed any interest in participating in this three-year-old case.  The mass mailing of unauthorized notices was contrived by plaintiff's attorneys as a means of drumming up additional attorneys' fees in a case where the claims of their only client had already been satisfied.  Beginning on March 23, 2007, as a result of this misleading and deceptive notice, fifty individuals attempted to opt into this lawsuit within the forty-five day period after issuance of the notice.  See Dkt. # 14.

On March 20, 2007, defendant filed a motion to dismiss for lack of subject matter jurisdiction, emphasizing recent case law in the Second Circuit holding that a fully compensable offer of judgment resolves the claims in an FLSA collective action and moots the case.  Dkt. # 76.  That motion is currently pending before the Court.  Plaintiff's counsel knew when the

3

notices were sent out that there was a strong possibility the offer of judgment would resolve

plaintiff's FLSA claims, and there was no basis for believing that any further offers of judgment

would be made to anyone else.   Nonetheless, plaintiff's counsel strongly suggested in the notice

that all shop managers who joined the case could receive payments similar to the $11,500

offered to Rubery.   See McClellan Decl. Exhibit B (March 16, 2007 solicitation to shop

managers).

      The Body Shop notified the Court of the unauthorized notice immediately upon

learning of its distribution, on March 21, 2007.   See Scanlon Decl. Exhibit I (March 21, 2007

letter from defendant's counsel to the Honorable David G. Larimer).   Beyond the misleading and

inaccurate language in the notice, some of which The Body Shop had already objected to in the

earlier draft tendered to the Court, the company was extremely concerned about how plaintiff's

counsel had obtained the names and home addresses of its store managers.   Such internal

company information is strictly confidential.   McClellan Decl. ¶¶ 3-5.

      For more than seven weeks, plaintiff's counsel refused to explain how they had

obtained the names and home addresses of the shop managers to whom the notices were sent.

Scanlon Decl. ¶¶ 11-13.   After defense counsel continued to press this point during a second

telephone conference with Judge Feldman, on May 22, 2007, plaintiff's counsel stated for the

first time that the source of this information was an internal company document that listed the

full name of each shop manager, together with other information including the city and state

where the manager worked.   See Scanlon Decl. Exhibit L (May 25, 2007 letter to plaintiff's

counsel, copying Judge Feldman).   Plaintiff's counsel then used this information to find home

addresses for individual shop managers.

The document in question is a shop manager directory which Rubery obtained during her employment with The Body Shop.  This document is strictly confidential and it was misappropriated by plaintiff and her counsel in violation of a confidentiality agreement which Rubery herself signed.[2]  See McClellan Decl. ¶¶ 3, 7.  The Body Shop seeks to protect documents like this which contain confidential employee information.[3]  As a condition of her employment, The Body Shop required that Rubery sign an Employee Confidentiality Agreement, agreeing not to disclose, misuse or misappropriate any confidential information during or after her employment with the company.  McClellan Decl. ¶ 7.  A copy of this signed Confidentiality Agreement was sent to plaintiff's counsel during discovery in this case, well before plaintiff and her attorneys used the shop manager directory against the company in violation of the Agreement.  Scanlon Decl. ¶ 15.  Plaintiff's attorneys were aware that disclosure and misappropriation of confidential information of the company was a blatant breach of their client's obligations, as well as their own, which is why they hid this fact from defendant's counsel for nearly two months.  Scanlon Decl. ¶¶ 11-14.

## ARGUMENT

I.      **Plaintiff and Her Counsel Misappropriated Confidential Information, Which Should Be Remedied By Striking the Opt-Ins**

In the Employee Confidentiality Agreement, Rubery agreed not to "disclose, misuse or misappropriate confidential information of the Company."  McClellan Decl. Exhibit

---

[2]      A copy of the shop manager directory can be filed under seal at the Court's request.

[3]      The Body Shop does not provide the last names of its employees to customers or other members of the general public, to protect the company and its employees from improper or unsafe contact with third parties, among other reasons.  See McClellan Decl. ¶¶ 4-5.

A.  This duty extended "beyond termination of [her] employment with the Company."  Id.  The term "confidential information" was given the broadest possible meaning, and it was "not limited to" the types of information expressly listed in the Confidentiality Agreement.  Id.  Included among the items expressly listed as "confidential information" are "employee information" and other types of "personal, privileged or otherwise sensitive data."  Id.  Because the shop manager directory includes the first and last name of every shop manager, and the city and state where they work, it contains the type of "confidential information" which the Agreement protects.  For the same reason that plaintiff's counsel was able to determine from this information the home addresses of the company's shop managers, disclosure of the document poses a risk to the company and its employees which the Confidentiality Agreement was designed to protect against.

The Body Shop, like many companies, has a policy of keeping employees' last names confidential.  Shop employees do not disclose their last names to customers or other members of the general public.  McClellan Decl. ¶ 5.  Each shop employee's name tag discloses only the person's first name.  The Body Shop's employees, most of whom are women, have been the object of violent physical attacks, stalking, and harassment by members of the public.  Id.  They have also been threatened by disgruntled customers and subjected to unwanted attention from male visitors to the stores.  Id.  Disclosure of any employee's last name presents a risk that the employee will be subject to unwanted attention, harassment or physical violence outside of the store.  Id.

Preventing access to its employees' last names also helps The Body Shop in not having its managers recruited by the competition.  McClellan Decl. ¶ 6.  Shop managers are

6

often recruited by the company's competitors, and it is much easier to approach someone if you

know their full names.  Id.  Protecting access to compilations of employee information, including

documents like the nation-wide shop manager directory, is one way The Body Shop tries to

protect itself from losing employees to its competitors.  Id.

        Plaintiff's counsel was aware of the confidential nature of the shop manager

directory, both because on its face it is clearly an internal company document which contains

sensitive and confidential information, but also because a copy of the Employee Confidentiality

Agreement which Rubery signed was produced to plaintiff's counsel in discovery.  Counsel

knew from that Agreement that because the shop manager directory contained "employee

information" and other confidential information, it was protected from disclosure and could not

be misappropriated.  Scanlon Decl. ¶ 15.  As evidenced by the repeated efforts by plaintiff's

attorneys to obfuscate the source of the information they used to contact shop managers, they

knew they had no right to use the shop manager directory for any purpose, much less to locate

individuals to sue The Body Shop.

        The Employee Confidentiality Agreement explicitly states that disclosure of

confidential information will cause irreparable harm to The Body Shop, and that The Body Shop

can seek an injunction to prevent disclosure of its confidential information.  McClellan Decl.

Exhibit A.  Courts in both New York and North Carolina, the state by whose laws the Employee

Confidentiality Agreement is governed, have exercised their broad equitable powers in

remedying the misappropriation of confidential information and trade secrets.  See N.C. Gen.

Stat. § 66-154  (2007) (permanent injunction); Id. (restitution measured by economic lost or

unjust enrichment); Potter v. Hilemn Labs., Inc., 150 N.C. App. 326, 335,  564 S.E.2d 259, 265

(N.C. App. 2002) (restitution measured by unjust enrichment and disgorgement of gain); Willis of New York, Inc. v. DeFelice, 299 A.D.2d 240, 243 (N.Y. App. Div. 2002) (injunction); Monovis, Inc. v. Aquino, 905 F. Supp. 1205, 1234 (W.D.N.Y. 1994) (injunction, return of trade secrets, and assignment of intellectual property obtained through the use of misappropriated information); FMC Corp. v. Taiwan Tainan Giant Indus. Co., 730 F.2d 61, 63 (2d Cir. 1984) (injunction).  Similarly, this Court can and should remedy the misappropriation of the shop manager directory by striking the opt-in plaintiffs and preventing plaintiff's attorneys from representing any of the opt-in plaintiffs in other actions against The Body Shop.

II.     **The Notice Sent to Shop Managers Is Misleading, Inaccurate and Deceptive**

The notice sent out by plaintiff's counsel was so inaccurate, misleading and deceptive that any consents based on it should be cancelled by the Court.  See Hoffman-La Roche, 493 U.S. at 172 (noting that the court can strike opt-ins resulting from deceptive and misleading notices).  Starting with just the second sentence in the notice, it was falsely represented that, "We obtained your name from documents provided to us by The Body Shop and the Plaintiff."  McClellan Decl. Exhibit B.  As described in Section I, supra, plaintiff's counsel obtained the names of store managers from a misappropriated company directory that was in the possession of Yvette Rubery; there is no evidence that the names of store managers were provided to plaintiff's counsel by The Body Shop.

Although this sentence in the notice is false, it created the impression that recipients of the notice were specially selected by both plaintiff's counsel and The Body Shop to receive this notice.  This would tend to make the recipient feel more comfortable about receiving the notice and more likely to accept the statements therein as genuine and accurate.  This

8

statement was deliberately misleading and deceptive and was designed to establish a false sense of trust with the shop managers who received the notice, and to encourage them to join the case.

The notice next gave a highly inaccurate and misleading description of who "may be entitled to money from this lawsuit."  First, it stated that individuals could qualify if their "primary job duty was performing tasks such as:  waiting on customers; ringing up sales; stocking product; and, arranging merchandise."  McClellan Decl. Exhibit B.  This is not the test which this Court has adopted.  As stated in the Court's summary judgment ruling, the question is "whether the employee's primary duty is managerial" and this depends on five factors listed in the regulations adopted by the U.S. Department of Labor:  (1) the amount of time spent performing managerial duties; (2) the relative importance of the managerial duties as compared with other duties; (3) the frequency with which the employee exercised discretionary power; (4) the relative freedom of the employee from supervision; and (5) the relationship between the employee's salary and the wages paid to employees doing similar non-exempt work.  See Dkt. # 73 at 4 (citing 29 C.F.R. § 541.103).

If a shop manager spent 90% of his or her time performing the kinds of sales duties which are listed in the notice from plaintiff's counsel, that person would think he or she was "entitled to money from this lawsuit," but the law in this Circuit is that this fact is not determinative of whether the employee's "primary" duty is management.  See Donovan v. Burger King Corp., 675 F.2d 516, 521 (2d Cir. 1982) ("much of the oversight of the operation can be carried out simultaneously with the performance of non-exempt work.").[4]  Because the five

---

[4]     Even if plaintiff spent as much as 90% of her time completing the same sales duties non-exempt employees perform, that percentage does not preclude a finding that her primary

(continued...)

factors set forth by this Court are substantially different from the standard set forth in the notice,

the notice is misleading and deceptive.  Many shop managers who decided to opt in based on this

notice may have been misled into thinking that they were entitled to money simply because they

performed a lot of sales duties.  That fact alone does not prevent a finding that management was

still their primary duty and it does not entitle them to relief under the FLSA.  Because the notice

from plaintiff's counsel gave a contrary message, the opt-ins that resulted from the notice should

be cancelled.

        The notice also stated that shop managers were eligible to receive money from the

case if they did nothing more than supervise "less than 80 employee hours <u>in a week</u>."  McClellan

Decl. Exhibit B (emphasis added.)  This highly misleading statement deceived recipients of the

notice into thinking that if they supervised less than 80 employee hours even one time, anytime

during their employment, they were or could be entitled to money.  That is not the law, and

plaintiff's counsel knows it is not the law.  This Court held in its summary judgment ruling that

even where a shop manager supervises less than 80 employee hours as much as *twenty percent of

the time*, this would still constitute "customary and regular" supervision of two full-time

employees or their equivalent *as a matter of law*, meaning that the shop manager had met that

particular exemption from overtime pay and would not be entitled to relief based on that factor.

Dkt. # 73 at 7.  Under <u>Hoffman-La Roche</u>, this part of the notice was so misleading that it

---

[4]      (...continued)
      duty was management.  <u>See</u> <u>Baldwin v. Trailer Inns, Inc.</u>, 266 F.3d 1104, 1115 (9th Cir.
      2001); <u>Kastor v. Sam's Wholesale Club</u>, 131 F. Supp. 2d 862, 866-67 (N.D. Tex. 2001).

destroyed the recipients' ability to make a properly informed decision, and therefore represented a "misuse of the class device." Hoffman-La Roche, 493 U.S. at 171.

Additionally, plaintiff's counsel improperly used the offer of judgment in their notice to suggest that other store managers would also profit, even though plaintiff's counsel had no basis for believing that The Body Shop would make offers of judgment to anyone else. McClellan Decl. Exhibit B. This is an improper and misleading use of an offer of judgment. Because the offer of judgment was not accepted by Rubery, it may not be used as evidence of the strength of plaintiff's FLSA claim. "An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs." Fed. R. Civ. P. 68. Indeed, an offer of judgment is "intended to encourage settlements and avoid protracted litigation." See Lyons v. Cunningham, 583 F. Supp. 1147, 1158 (S.D.N.Y. 1983) (citing Delta Air Lines, Inc. v. August, 450 U.S. 346, 352, 101 S. Ct. 1146 (1981)); see also Fed. R. Civ. P. 68, Advisory Committee Notes, 1946 Amendment. Not only did plaintiff's counsel refer to the amount of the offer of judgment in the notice, they actually attached a copy of it. It was a highly improper tactic which violated the purpose and spirit of Rule 68.[5]

The "consent form" attached to the notice was itself misleading. By signing the form, recipients have authorized plaintiff's counsel to represent them "to contest" the alleged failure to pay wages as required "under state law." However, the action Rubery commenced alleged a violation of the law of a single state – New York. Contrary to the representation made

---

[5]     The notice also was improper because it was sent out en masse to The Body Shop store managers and it failed to inform them that employees who started work after July 5, 2003, were ineligible to recover anything. The notice in no way was tailored only to individuals who could participate in this case.

in the consent form, this action will provide no forum for shop managers of The Body Shop who were employed in any other jurisdiction to seek recovery.  See, e.g., Letouzel v. Eastman Kodak Co., No. 05-6464, 2006 U.S. Dist. LEXIS 33453, at *12, 2006 WL 1455478 (W.D.N.Y. May 25, 2006) (dismissing the state law class allegations for overtime pay because plaintiffs could not satisfy the requirements for a class and declining to exercise supplemental jurisdiction over the individual state law claims outside of New York because "state law wage and contract claims . . . raise complex, diverse issues of state law that will substantially predominate over the FLSA claim"); Glewwe v. Eastman Kodak Co., No. 05-6462, 2006 U.S. Dist. LEXIS 33449, 2006 WL 1455476, at *3-4 (W.D.N.Y. May 25, 2006) (same).

The Supreme Court has stated that misleading communications to putative collective action members constitute "misuse of the class device."  Hoffman-La Roche, 493 U.S. at 171.  The remedy for such misleading notices is, and must be, invalidation of the consents obtained through these notices.

## III.   Plaintiff's Counsel Improperly Sent Out a Misleading Notice Without Approval from the Court or Review By Opposing Counsel

### A.   This Court Required Plaintiff's Counsel To Obtain Approval of the Collective Action Prior to Issuing Notice

In an order dated June 13, 2005, the Court stated:  "All consents to opt-into the FLSA collective action (if the Court deems a collective action is appropriate) shall be filed no later than 45 days after notice of a collective action is sent."  Dkt. # 14 at ¶ 5 (emphasis added). The terms of this Order required plaintiff to seek Court approval of a collective action before sending out notices to putative class members, and before filing any consents to opt in.  On May 26, 2005, the parties signed a discovery plan laying out the same prerequisites for notices and opt-

ins.  In accordance with this plan and with the June 13, 2005 Order, plaintiff's counsel requested

certification in its Motion to Certify Class for Expedited Notice to Affected Employees and

renewed that request in a subsequent letter.  See Dkt. # 19; Scanlon Decl. Exhibit F.

The case law is clear that a district court has the discretionary authority to oversee

the notice-giving process in a collective action.  Hoffman-La Roche, 493 U.S. at 170 (noting "the

propriety, if not the necessity, for court intervention in the notice process") (upholding Braunstein

v. Eastern Photographic Laboratories, Inc., 600 F.2d 335, 336 (2d Cir. 1978)).  As the Supreme

Court has noted, "[t]he court is not limited to waiting passively for objections about the manner in

which the consents were obtained."  Hoffman-La Roche, 493 U.S. at 172.

### B.    Plaintiff's Counsel Requested Judicial Approval

In recognition of this Court's order, plaintiff's counsel requested the review of this

Court to approve notice to putative collective action members, both with their Motion for

Expedited Notice and their letter renewing this request.  See Dkt. # 19; Scanlon Decl. Exhibit F.

It was improper for plaintiff's counsel, on the same day they requested review from this Court, to

act on their own.

In reviewing the notice, the district court serves both parties and the public good,

not just the plaintiff.  The Supreme Court has emphasized that court involvement is important at

the notice stage (1) to promote accurate information "so that [recipients] can make informed

decisions about whether to participate," Hoffman-La Roche, 493 U.S. at 170; (2) to ensure that

the process is efficient, orderly, and "not otherwise contrary to statutory commands or the

provisions of the Federal Rules of Civil Procedure," id.; (3) to prevent the potential for misuse of

13

the class device, "as by misleading communications," id. at 171; and (4) to resolve disputes at an early stage of the proceedings, id.

All four of the Hoffman-LaRoche factors weigh in favor of prior review of the notice in the present matter.  First, as described in Section II, supra, the notice misled individuals as to how they might qualify to join this action and what type of monetary reward they could expect.  By doing so, the notices failed to provide accurate information so individuals could make informed decisions about whether to opt into this lawsuit.  Seeking judicial approval could have remedied this.  "By monitoring preparation and distribution of the notice, a court can assure that it is timely, accurate, and informative."  Id. at 172.  Second, as described in Section I, supra, the notices were sent out by misappropriating a confidential company document in clear violation of the law.  Third, these mailings abused the collective action process by widely dispersing deceptive and misleading information.  Finally, plaintiff's counsel denied defendant the opportunity to review these notices prior to their distribution.  The Supreme Court has recognized that "trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute."  Id. at 171.  There is an obvious benefit to resolving such disputes prior to distribution of the notices.  "Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed."  Id. at 172.

Moreover, plaintiff's counsel acted inappropriately by failing to notify defendant's counsel of its intent to send out the notice, especially in light of the deceptive and one-sided language in the notice and the extensive mailing that was sent to shop managers.  Given the obvious benefit of settling disputes prior to distribution, the Seventh Circuit has held it is mandatory before a notice goes out for defendant's counsel to "have an opportunity to verify the

14

accuracy of the notice and, if he wished, to move for an order amending the notice or limiting its

distribution in an appropriate manner."  Woods v. New York Life Ins. Co., 686 F.2d 578, 580 (7th

Cir. 1982); see also Heitmann v. City of Chicago, 04-3304, 2004 U.S. Dist. LEXIS 14669, at *4,

2004 WL 1718420 (N.D. Ill. July 30, 2004) ("It is settled law in this Circuit that Plaintiff must

provide notice to the Defendant prior to distributing notice and consent forms in FLSA actions

under 29 U.S.C. § 216(b)").  Plaintiff's counsel here acted improperly by widely circulating a

misleading notice without first discussing its content with The Body Shop.  By failing to do so,

plaintiff's counsel denied defendant the opportunity to correct false and deceptive statements

before irreparable harm was done.

### C.   Prior Review of the Notice Does Not Unduly Constrain Communication with Putative Collective Action Members

It in no way impedes plaintiff's ability to communicate with putative class

members to first submit the notice to the Court or opposing counsel for review.  This review

simply eliminates deceptive, unprotected communication from being dispersed on a widespread

level.  See Shapero v. Kentucky, 486 U.S. 466, 472 (1988) (noting that false and deceptive

communication is not protected); see also Hoffman-La Roche, 493 U.S. at 170-72 (extolling the

benefits of prior review of notices); Woods, 686 F.2d at 580 (same).  Plaintiff's counsel

themselves have recognized the importance of court approval of notice to prevent the mailing of

unfair and misleading notices.  In their Motion for Expedited Notice, plaintiff acknowledges that

"court-authorized notice prevents 'misleading communications' . . . " See Motion for Expedited

Notice, Dkt. # 19, at 12 (quoting Hoffmann-LaRoche, 493 U.S. at 172).  Plaintiff also conceded

that their ability to send out notices on their own is limited to communication which "is accurate and not misleading." Id. at 13.

Acting on their own, plaintiff and plaintiff's counsel still may communicate with potentially affected parties in a manner which is not improper. Without notifying the Court or opposing counsel, plaintiff's counsel could respond to individuals who express interest in this matter. See Threatt v. Residential CRF, Inc., No. 05-117, 2005 U.S. Dist. LEXIS 22509, at *10, 2005 WL 2454164 (N.D. Ind. Oct. 4, 2005) ("[P]otential plaintiff was sent a consent form *only after* that potential plaintiff had first informally heard about the case and then contacted Plaintiffs' counsel and requested to join the suit.") (emphasis in original). However, in a situation like this, where plaintiff's counsel sent out a notice en masse, which is misleading and deceptive, it is wholly improper for plaintiff's attorneys to act on their own without notifying the Court or opposing counsel.

## IV.   The Numerous Instances of Improper Conduct by Plaintiff's Counsel Merit Equally Serious Remedies from this Court

The remedy from this Court ought to fit the totality of the misdeeds by plaintiff's counsel. The Supreme Court has made clear a court can, and in this case should, "cancel consents obtained in an improper manner." Hoffman-La Roche, 493 U.S. at 172. However, merely striking the opt-ins does not remedy the irreparable harm caused to The Body Shop. Plaintiff's counsel, in a selfish effort to drum up more attorneys' fees for their law firm, raised false expectations among dozens of store managers that they would receive money from The Body Shop. To prevent plaintiff's counsel from continuing to benefit from their improper conduct, this

Court should bar them from representing any of the attempted opt-ins in FLSA cases against The Body Shop.

            The Body Shop can never fully be protected from the unfair harm caused by plaintiff's counsel.  Even if plaintiff's attorneys are barred from future representation, other attorneys could possibly represent these store managers.  Therefore, we respectfully request that the Court remove the list of opt-ins from the docket and order plaintiff's counsel not to distribute their list of the opt-ins to others.  "District courts have broad authority in crafting equitable remedies . . ."  <u>Conn. Office of Prot. & Advocacy for Persons with Disabilities v. Hartford Bd. of Educ.</u>, 464 F.3d 229, 245 (2d. Cir. 2006).  Defendant also requests that this Court grant any further equitable relief which it deems just.  These circumstances, involving repeated acts of improper conduct, merit equally strong remedies.

## **CONCLUSION**

For all of the foregoing reasons, The Body Shop respectfully requests that this Court issue an order (1) striking all of the opt-ins in this matter; (2) barring plaintiff's counsel from representing the opt-in plaintiffs in future FLSA litigation against The Body Shop; (3) removing from the docket and any other public record the list of attempted opt-ins and ordering plaintiff's counsel not to distribute the names of opt-ins to others; and (4) granting The Body Shop such other and further relief as this Court deems just, proper and equitable.

Dated: June 14, 2007                                        Respectfully submitted,


                                                            /s/ Jerauld E. Brydges
                                                            Jerauld E. Brydges, Esq.
                                                            HARTER SECREST &
                                                                EMERY LLP
                                                            1600 Bausch & Lomb Place
                                                            Rochester, NY 14604-2711
                                                            (585) 232-6500

                                                            Kerry Alan Scanlon, Esq.
                                                            KAYE SCHOLER LLP
                                                            901 Fifteenth St., NW,
                                                            Suite 1100
                                                            Washington, DC 20005
                                                            (202) 682-3500

                                                            Attorneys for Defendant

18