1

1                    UNITED STATES DISTRICT COURT

2                    WESTERN DISTRICT OF NEW YORK

3

4

5      - - - - - - - - - - - - - - X
       YVETTE RUBERY, et al.,        )     04-CV-6337(L)
6                     Plaintiffs     )
       vs.                           )
7                                    )     Rochester, New York
       BUTH-NA-BODHAIGE, INC.,       )     May 20, 2008
8                     Defendant.     )     11:15 a.m.
       - - - - - - - - - - - - - - X
9

10

11                        TRANSCRIPT OF PROCEEDINGS
                    BEFORE THE HONORABLE DAVID G. LARIMER
12                       UNITED STATES DISTRICT JUDGE

13                       DOLIN THOMAS & SOLOMON, LLP
                         BY: PATRICK J. SOLOMON, ESQ.
14                       693 East Avenue
                         Rochester, New York 14607
15                       Appearing on behalf of the Plaintiffs

16

17                       KAYE SCHOLER, LLP
                         BY: KERRY ALAN SCANLON, ESQ.
18                       901 15th Street N.W., Suite 1100
                         Washington, D.C. 20005
19
                                   - and -
20
                         HARTER SECREST & EMERY, LLP
21                       BY:  ROBERT C. WEISSFLACH, ESQ.
                         1600 Bausch & Lomb Place
22                       Rochester, New York 14604-2711
                         Appearing on behalf of the Defendant
23

24     COURT REPORTER:    Christi A. Macri, FAPR, RMR, CRR, CRI
                          Kenneth B. Keating Federal Building
25                        100 State Street
                          Rochester, New York 14614-0222

<u>P R O C E E D I N G S</u>

\*          \*          \*

1

2

3     THE COURT: All right, good morning.  Sorry for the

4  slight delay, but --

11:19AM  5          MR. SOLOMON: Good morning, Your Honor.

6          THE COURT: Good morning.

7          MR. SCANLON: Good morning, Your Honor.

8          THE COURT: Good morning.  Do we have appearances for the

9  record?  We have already, okay.

11:19AM  10          THE REPORTER:  Yes.

11          THE COURT: Well, this case is back.  I've dealt with it

12  on a few occasions, and I guess we're dealing with the application

13  to certify this as a collective action.

14          Whenever I deal with these issues -- and I have faced

11:19AM  15  them on not a few occasions before -- the applicant, the

16  plaintiff, always points out to me that the standard is pretty

17  lenient at this stage because one could say it's just giving

18  notice to people and they may or they may not choose to opt-in or

19  not.

11:20AM  20          And I know part of the argument here is that plaintiff

21  really has failed to establish that these folks are similarly

22  situated.

23          Maybe you could both comment on that as to whether, I

24  guess at this stage, I should worry too much about that.

11:20AM  25          In other words, whether this is something that could be

1  sorted out later on depending on whether we have 10 people opt-in

2  or 10 times 10 people.

3  So whoever wants a crack at it first.

4  MR. SCANLON: Your Honor -- go ahead.

11:20AM  5  MR. SOLOMON: Thank you, Your Honor.  The issue that you

6  raise as to whether now is the time to delve into the merits and

7  the scope and the exact identity of who receive notice has been

8  addressed by this Court in the *Parks vs. Dick's Sporting Goods*

9  matter in a decision from Judge Siragusa --

11:21AM  10  THE COURT: Right.

11  MR. SOLOMON -- which was affirming a decision from

12  Magistrate Judge Feldman.

13  In there the Court said, you know, as to these issues, I

14  understand that defendant is raising certain defenses and the

11:21AM  15  question and the timeliness of that issue is do you reach it at

16  the initial stage of certification or do you reach it at a later

17  time post discovery in response to a decertification motion from

18  the defendant.

19  And there the Court said, "I agree with Judge Feldman

11:21AM  20  that that is the appropriate time to deal with those specific

21  issues."

22  THE COURT: And I think you have suggested that it's not

23  just that case from Brother Siragusa, there's other authority that

24  speaks to that as well.  Not that Judge Siragusa's decision isn't

11:21AM  25  usually enough for me, but --

1          MR. SOLOMON: That's right, Your Honor.  In our papers we

2     do submit a number of cases suggesting that the defendant is

3     basically raising merits, credibility, and temporal scope defenses

4     and that those issues are better left for post discovery.

11:22AM  5          I can go through the different cases --

6          THE COURT: No, I think we're not unfamiliar with them,

7     and I think they're in your papers, but how many opt-ins or

8     individuals have indicated their interest now?

9          I think at some point I made a note that some 60

11:22AM  10    managers had filed affidavits and that there were several dozen

11    that actually opted-in.

12          MR. SOLOMON: That's correct, there's approximately 60

13    shop managers who have opted-in, and we did submit eight

14    affirmations, including Ms. Rubery's.

11:22AM  15          THE COURT: What's your guesstimate as to how many more

16    there might be?  60 sounds like a pretty good number, I mean.

17          MR. SOLOMON: Well, there's approximately 300 nationwide,

18    and turnover in the retail industry, you know, can range any

19    number.  So depending on how many shop managers worked at each of

11:23AM  20    those shops, there could be anywhere from 300 to 700 shop

21    managers.  And, of course, it would depend -- I haven't seen

22    anything from the defendant yet on the list of employees, but it

23    would be in that number is my guess.

24          THE COURT: Any thoughts or response to --

11:23AM  25          MR. SCANLON: Good morning, Your Honor.  Let's start with

1    the number of opt-ins.  As Your Honor remembers, because you wrote

2    a decision about this, there actually were 58 opt-ins; two of them

3    did not work in the relevant time period.  So I believe we have

4    the names of 56 relevant opt-ins, but that list came from a notice

11:24AM  5    that was sent out by plaintiff's counsel.  Your Honor wrote a

6    decision on that.

7            So there's reason to believe that these were the best

8    they could find out of the 300 shop managers nationwide because

9    they had a list of the entire workforce during this relevant time

11:24AM  10   period that they used to contact former shop managers, and out of

11   that they got roughly 60.

12            Now, what's different about --

13            THE COURT: I guess I would say well, so what?  In the

14   sense how does that affect my decision as to whether or not to let

11:24AM  15   them send out now a Court-approved notice?

16            MR. SCANLON: What I wanted to point out about the number

17   of opt-ins, Your Honor, that is an example that everywhere you

18   look in this case at the facts, we do know -- and this case has

19   been going on for some time, so there have been facts that have

11:24AM  20   been developed.

21            You see that from 50% to 80% of the putative class

22   members will not qualify for overtime under your decision, that is

23   to say on the decisive issue of whether they supervised two or

24   more full-time employees.

11:25AM  25            We have submitted evidence to the Court and I'd like to

1    go over that with Your Honor this morning because it's very easy

2    to see when you see it on paper, but take those 58 opt-ins, for

3    example, or 56, nearly half of them or more than half, depending

4    on whether you count their paid leave time or not, supervised more

11:25AM    5    than 80 hours per week more than 80% of the time.

6         Thus, under your decision as a matter of law, they would

7    not qualify for overtime under that prong of the FLSA.

8         And this is something that's unique, Your Honor.

9    Mr. Solomon mentioned the *Parks* case.  The *Parks* case was driven

11:25AM    10   by the facts, as all of these cases are, because I can point to

11   your own decision in which Your Honor said that these cases don't

12   lend themselves to class actions to facts involving each shop

13   manager and what their respective job duties was.

14        In this case on summary judgment you mentioned, even as

11:26AM    15   to Rubery herself, there were many facts in dispute that would

16   have to be decided by the fact finder and that would only be

17   multiplied if you had 50 people in a class or whether you had 100

18   people in a class.

19        But going back to *Parks*, in that case, Your Honor, the

11:26AM    20   judge found that the golf professional supervised nobody,

21   certainly not the case with shop managers; the job description had

22   no managerial or supervisory duties in it is whatsoever; the

23   training program had no managerial training; and that there had

24   been -- they had treated all of the golf professionals exactly the

11:26AM    25   same in the whole -- in the whole company, which is not true here.

1          There were shop managers in The Body Shop who were

2     exempt in some and some were non-exempt.  Even the action that the

3     plaintiffs cite in this case where Ms. Rubery was changed to

4     non-exempt only affected 30 or 40 people.

11:27AM  5          They looked at their shops individually, and the reason

6     they did that was because she was in one of the smaller volume

7     shops here in this area and they needed to cut back on the

8     full-time employment because they weren't making their budget.

9          They had enough volume in the larger stores, but they

11:27AM 10     didn't in the smaller stores.  They look at those individually.

11     When they cut back on the budget for subordinate employees, they

12     decided they could no longer justify the overtime exemptions for

13     those 30 or 40 stores and this is set forth in the complaint in

14     this case.

11:27AM 15          And if you look at -- we've been before Judge Feldman

16     recently, Your Honor, and he has told us to engage in discovery in

17     the New York State class which involves managers in New York

18     State.  And the same expert we're using in this case has looked at

19     those shop managers who were in New York and nearly 80% of those

11:28AM 20     would not qualify under your standard.

21          The third source of this information, Your Honor -- and

22     I would like to pass these up so you can look at them, you can

23     look at them very quickly, they're simple -- the third source of

24     information is that five stores sample study we did at

11:28AM 25     Judge Feldman's suggestion in 2005, I believe it was, several

1  years ago, and we were having a difference of opinion on

2  discovery.

3        He suggested, he said, Mr. Scanlon, why don't you do a

4  sample study?  Because he recognized the cost involved in looking

11:28AM  5  at all the stores, so we randomly selected five stores and looked

6  at the shop weeks.  At that point there were no opt-ins.

7        We were looking at stores rather than individuals and it

8  turned out, Your Honor, there were 680 shop weeks for that five

9  stores, roughly 135 per store of weeks, and 89% of those there was

11:28AM  10  more than 80 hours of subordinate time each week.  So we have 89%,

11  we have 79%, and we have the opt-ins around 50% of the time.

12        So the question I would put before Your Honor is there

13  has never been a case in which a court has granted this collective

14  action certification where the judge knew in advance that between

11:29AM  15  half of the members of the class and perhaps as high as 80% of the

16  class will not qualify under the Court standards for overtime;

17  that's why they're not similarly situated.

18        THE COURT: I mean, I guess part of that argument hinges

19  on, to some extent, whether the plaintiffs agreed with your

11:29AM  20  assessment and what you said sounded like sort of the merits

21  argument that maybe should be deferred.

22        But as you were talking, I also thought of this:  If the

23  Court does not certify this, how is it really going to change the

24  lawsuit?  You've already got a number of people involved.  I mean,

11:30AM  25  isn't it going to make the lawsuit easier to litigate?  More

1  difficult?

2        MR. SCANLON: It will make it more difficult, Your Honor,

3  and it's not that.

4        THE COURT: What if I certify or if I don't?

11:30AM  5        MR. SCANLON: Yes.  If you do certify, it will make it

6  more difficult and more expensive needlessly.

7        And here's why I say needlessly:  Because of the 60 that

8  we have in the case now, as I said, half of them will probably

9  fall out when you come back after the full discovery -- and this

11:30AM 10  is not disputed in terms of the facts and what these are from.

11        MR. SOLOMON: This is disputed, Your Honor.

12        MR. SCANLON: There's no dispute as to this.  It's been

13  in the record for a long time.

14        MR. SOLOMON: If I can point out this point?

11:30AM 15        THE COURT: One at a time here.  Mr. Scanlon has the

16  floor.

17        MR. SCANLON: And if -- if Your Honor was to allow

18  further notices to the entire class, the evidence suggests that

19  more than two-thirds of those recipients of the notice inviting

11:31AM 20  them to join this case will not qualify.

21        So why should they be given an invitation to join the

22  case if we have solid evidence to suggest that they won't qualify?

23        In the *Rite Aid* case, Your Honor, which I think is in

24  our brief, says that a defendant is permitted to come forward on

11:31AM 25  this class action stage and offer evidence to show that they're

1  not similarly situated.

2         So it's not inappropriate for The Body Shop to say, Your

3  Honor, they're not similarly situated for one very simple reason:

4  They're not going to qualify under your standard.

11:31AM  5         THE COURT: Well, aren't there two things?  Number one,

6  there's a whole body of law where courts consider decertification

7  applications which suggest that certification was allowed

8  initially, and then things developed; and if they develop as you

9  suggest, then maybe that's the time to deal with this.

11:31AM  10         The second point is are there any set of facts that the

11  Court might modify or alter the description of the class here?  I

12  mean, nobody suggested that and maybe that's not something that's

13  in the cards, but --

14         MR. SCANLON: Your Honor, we did suggest that in our

11:32AM  15  brief.  It was not our first position, but we did suggest --

16         THE COURT: I only read the first position.  A little

17  light humor here.

18         MR. SCANLON: Your Honor, as many briefs as have been

19  filed in this case, one could be forgiven for not remembering

11:32AM  20  every argument that both sides have been made.

21         THE COURT: I've been kind of jammed with a trial, but go

22  ahead.

23         MR. SCANLON: I understand, Your Honor.

24         Your Honor, one of the things that we -- an argument

11:32AM  25  that we made -- and I do want to go back to this chart, but

1    without prejudice to that argument, I would say that a fallback

2    position that The Body Shop offered in this case was as follows:

3    And that was to only send the notice out to those individuals who

4    would have a chance of qualifying for overtime, and here's what I

5    mean by that:    In your opinion, you said if you have over 80

6    hours more than 80 percent of the time, as a matter of law you

7    don't qualify.  You said under 80%, you said it's up to the fact

8    finder, it has to go to trial.

9          So if we sent notices out to those shop managers who

10   supervised according to the records, the only records we have in

11   the case maintained in a computer base by the company, that

12   supervised less than 80 hours who would have a chance, go through

13   discovery with them, and then come back and see how many of them

14   would qualify, how many would not, that would at least avoid

15   the -- it would avoid sending notices out to a lot of people, Your

16   Honor, who I don't believe would ever qualify.

17         Now, the reason I said that's our secondary position is

18   because they have only listed one class definition in this case

19   from the beginning of this lawsuit.  They have said people who

20   have supervised less than two full-time employees, you have to

21   have that characteristic to be in this class.  They have never

22   waived from that definition.

23         My understanding of the case law, Your Honor, and you

24   certainly considered a lot of class actions in your years of

25   experience, but typically the Court and the defendant do not

1   rewrite the plaintiff's class definition.  If the class definition

2   doesn't meet the legal standard, it's denied.

3          But having said that, I did want to point out that we do

4   offer this secondary possibility of only sending out notices to

11:34AM  5   those people who did, according to the record, supervise less than

6   80 hours and, therefore, the fact the jury would have to define --

7   decide in that case, the fact finder, whether or not that was two

8   full-time employees.

9          Your Honor, if I could just hand up -- and Mr. Solomon

11:34AM 10   has a copy of this, Your Honor.

11          THE COURT: Let me just -- this is brand-new.  I don't

12   know how the plaintiff feels about receipt of this at this stage.

13          MR. SCANLON: Your Honor --

14          MR. SOLOMON: This is an amended -- excuse me.  This was

11:35AM 15   an amended affidavit that was handed to me just prior to your

16   sitting on the bench.  I've read earlier versions of it, but I

17   haven't read this, which has some amendments.

18          MR. SCANLON: Your Honor, the first part of this, the

19   first two charts in this affidavit are identical to charts that

11:35AM 20   have been in the case -- for some time in this case.

21          The only change is that there were five opt-ins, Your

22   Honor, out of the 60 who we do not have the correct name because

23   they had either gotten married or divorced since the names we were

24   provided by Mr. Solomon, we were able to get those names and we

11:35AM 25   went back and added those statistics.

1          MR. SOLOMON: Before -- I'm sorry, Mr. Scanlon.

2          Before Mr. Scanlon gets into this, can I just raise one

3   point for the Court to consider?  Which is basically this is the

4   exact type of information that the defendant relied on in moving

11:36AM   5   for summary judgment and the Court said the information relied on

6   by Dr. Siskin is subject to a motion to compel before

7   Judge Feldman, and held that that, in any event, would raise

8   questions of fact going to the merits of plaintiff's claims.

9          The judge granted -- Judge Feldman granted our motion to

11:36AM  10   compel, and since then we have not received the information

11   ordered by Judge Feldman as to the underlying data relied on by

12   Dr. Siskin.

13          So we would state that this information now is not

14   relevant, number one, because it's merit based.

11:36AM  15          Number two, because we have never received the

16   underlying data we requested and that was ordered by

17   Judge Feldman.

18          And, number three, that the amended document not be

19   considered because it was only handed to us at the beginning of

11:37AM  20   the argument.

21          THE COURT: Is there any schedule or deadline for

22   complying with Judge Feldman's directive relative to underlying --

23          MR. SCANLON: Your Honor, there was no set deadline, but

24   three weeks ago -- and I have the letter right here -- I wrote to

11:37AM  25   Mr. Solomon and I said, "We have the information, here's a

1   proposed confidentiality agreement to protect the confidential

2   information, please get back to me on that."   And there was one

3   aspect of the data that Judge Feldman had said -- asked us to give

4   an estimate of the cost and provide that to Mr. Solomon.

11:37AM 5          He has not responded to the letter three weeks ago; he

6   has not given me any feedback on the confidentiality order, and so

7   I have not provided the documents because it was clear that this

8   includes confidential information, but -- individual personnel,

9   their records and so forth, and he simply ignored the letter.

11:37AM 10          So, I mean, I've got the letter right here dated

11   May 1st, Your Honor, to Mr. Solomon.

12          MR. SOLOMON: That's exactly just a side issue.

13          The main issue is there was a confidentiality agreement

14   that was exchanged at the beginning of the case that would have

11:38AM 15   addressed this, number one.

16          Number two, the order says that any expert analysis or

17   documents they intend to rely on in its opposition to the

18   collective action must be disclosed.

19          It's not helpful for us to get it after the oral

11:38AM 20   argument or after any decision from the Court, regardless of the

21   date.  As to the date, Mr. Scanlon said he could turn it over in

22   30 days from the oral argument.

23          THE COURT: Well, I guess the Court has a couple of

24   options.  One, I could just not accept this affidavit, or I

11:38AM 25   could -- amended affidavit or declaration; or I can give you,

1   Mr. Solomon, if you can work out the logistics of getting the

2   material directed to be produced by Judge Feldman, for you to

3   respond to this if you are so inclined.

4            MR. SOLOMON: I think our first argument is that,

11:39AM   5   Judge Larimer, that it's not relevant at any time and that's --

6   Mr. Scanlon had --

7            THE COURT: Because it's merit based?

8            MR. SOLOMON: Number one, it's merit based.

9            Number two, it would go to Mr. Scanlon's request that

11:39AM   10  there be discovery had prior to the Court's ruling on this motion.

11           And that you already had issued an order that the motion

12  to compel be heard regardless, and that the motion for notice

13  proceed independently of that.  And that is based in the law

14  that --

11:39AM   15           THE COURT: So your request is what relative to this?

16           MR. SOLOMON: That, number one, that that recent amended

17  document not be addressed by the Court.

18           But even more important than that is that any merit

19  based argument based on the analysis that the people who have

11:39AM   20  opted-in is not relevant as to whether notice should go forward.

21           As you pointed out at the beginning, that the mere fact

22  that the plaintiffs engaged in their protected right to advertise

23  and solicit opt-in plaintiffs has no impact on whether the Court

24  should issue notice.

11:40AM   25           In fact, there's a decision of the Southern District

1   called *Lynch vs. United Services Automobile Association*.   The cite

2   is 491 F. Supp.2d 357, and the decision --

3          THE COURT: Is that in your papers?

4          MR. SOLOMON: No, this is a decision that wasn't cited at

11:40AM   5   the time because I don't think the argument was raised.

6          But this is dated -- this predates our filing; it's

7   April 26th, 2007.  And there's a short quote:  Finally, informal

8   efforts by plaintiffs and their counsel to provide notice to

9   potential opt-ins through advertisement letters or other means are

11:40AM   10  not factors to be considered by courts when determining whether to

11  approve court-authorized notice.

12         And so our, you know, the further extension of that

13  argument is defendant's argument here that these opt-ins, you

14  don't need to be thoroughly analyzed and have summary judgment

11:40AM   15  decided as to those people.  In other words, whether they have

16  claims here or not.  That's not appropriate at this time.

17         THE COURT: Mr. Scanlon suggested that as an alternative

18  remedy, there might be some modification of the description here.

19  What's your take on that?

11:41AM   20        MR. SOLOMON: That is a misstatement of our filings in

21  this case, the complaint, and also a misstatement of their defense

22  in the case so far.

23         They have asserted that there's an exemption.  We said

24  that Ms. Rubery was misclassified.  In order for them to meet that

11:41AM   25  burden, they need to show that her primary duty was of an

1 executive nature and that she supervised two or more employees.

2      Looking first at our complaint, we define the class.

3 And it's interesting because they cite the exact language we use,

4 and I guess there's a difference as to what it means, but our

11:41AM 5 language is the class is defined as employees who were served or

6 permitted to work more than 40 hours in a week by defendant -- the

7 important part -- whose job duties included performing sales

8 functions.

9      That's the primary duty aspect.  Our position has been

11:42AM 10 that she doesn't meet the primary duty test, number one.

11      Number two, while supervising fewer than two or more

12 employees.

13      At summary judgment the Court considered and found that

14 there were material questions of fact as to both prongs of the

11:42AM 15 employer's defense.

16      Likewise, our motion for notice views the exact same

17 language.  We asked for notice to all current and former employees

18 of defendant whose job duties included performing sales functions

19 while supervising fewer than two full-time equivalent employees.

11:42AM 20      THE COURT:  Well, there's no doubt that if I approve a

21 notice, I certainly can direct that the notice and the language I

22 think appropriate should be utilized?

23      MR. SOLOMON: That's correct, Your Honor.  And our

24 request had been that the -- that that notice goes out to people

11:43AM 25 who are similarly situated to Ms. Rubery.

1          And at the time that we're alleging that The Body Shop

2     violated the FLSA with respect to Ms. Rubery was prior to the time

3     that she was reclassified.  That is, when she was working as a

4     shop manager and was being paid on a salary exempt basis by the

5     defendant.

6               THE COURT: You mean when everybody was reclassified

7     or --

8               MR. SOLOMON: There was in July of 2003 a number -- I

9     don't have access to that yet -- of shop managers that were

10    reclassified from exempt to non-exempt.  Ms. Rubery was one of

11    those employees.

12              THE COURT: All right.  It wasn't an across-the-board

13    thing?

14              MR. SOLOMON: That's correct.  But the affidavits that we

15    submitted, affirmations in support for our motion for notice are

16    from half people who were not reclassified and who remained as

17    shop managers on a exempt basis; as well as an additional half

18    people who were reclassified.  Their job duties remained the same

19    prior and after the reclassification.

20              They both allege in their affirmations they supervised

21    fewer than 40 employees, and that their primary duties were not

22    management, but were the same duties as all the other hourly shop

23    employees.

24              MR. SCANLON: Your Honor, may I respond to some of this?

25              THE COURT: Well, let me -- I'm going to suggest, since

1    this case has been well-briefed and I'm not unfamiliar with the

2    entire case, and in the interest of the shortness of life, I'm

3    going to ask you to conclude.  And, I guess, Mr. Scanlon, I'll let

4    you go first and just see if you can hit --

11:44AM    5        MR. SCANLON: I'd like to --

6        THE COURT: -- a couple minutes here, and then I'll give

7    Mr. Solomon a chance to respond and we'll --

8        MR. SCANLON: Your Honor, what I just handed you in the

9    prior affidavit by this expert, which the current one amends it,

11:45AM    10   was from 2007.  Certainly can't be any complaint about that in

11   terms of timeliness.

12       And if Your Honor would look at that, the chart on that,

13   what it shows are all of the people and the percentage of time

14   that they supervised more than 80 hours per week of the opt-ins.

11:45AM    15       THE COURT: Okay.

16       MR. SCANLON: If you look at chart number 1, for example,

17   it shows 20 individuals of the opt-ins and it shows the percentage

18   of time that they supervised more than 80 hours per week.

19       The first five or six or -- 100% of the time, going down

11:45AM    20   to 80% under your decision, all those opt-ins would fail to

21   qualify for overtime.

22       If you look at chart 2 --

23       THE COURT: But just -- I mean, not to -- I just get the

24   sense that Mr. Solomon may not concur in all of this.  In other

11:46AM    25   words, there may be some dispute as to whether Ms. Hale or

1    Ms. Mahan or Ms. Cruz did and worked the kind of hours and under

2    the circumstances you suggest here.

3         MR. SCANLON: Your Honor, virtually everything in this

4    case has been disputed by the plaintiff that the company has

11:46AM  5    offered.  That doesn't mean it's not compelling evidence.

6         Mr. Solomon has disputed that he got notice of this

7    information, and I also handed you a letter dated May 1st, Your

8    Honor, that he has not responded to.

9         I do not appreciate opposing counsel saying it's unfair

11:46AM  10   that he doesn't have certain information when he's had a letter

11   with an offer to provide the information for three weeks and

12   hasn't even found it within himself to reply.

13        THE COURT: I understand your point.  All right, let's

14   conclude your presentation, Mr. Scanlon, and then we'll give

11:47AM  15   Mr. Solomon the last word since he's the applicant here.

16        MR. SCANLON: Your Honor, what the plaintiffs are

17   attempting to do in this case is to send out a notice to the

18   entire country of shop managers.

19        We have pointed out problems specifically with the

11:47AM  20   notice itself.  What we've been dealing with today are whether any

21   notice should go out at this point.  That notice would go to

22   hundreds of former shop managers at their last known address that

23   worked for The Body Shop.

24        And because of information that has been developed in

11:47AM  25   the course of the summary judgment motion and the other

1    dispositive motions in this case, we have a factual record here.

2    Unlike most cases that Your Honor has considered and other judges

3    have considered, when the issue of certification has arisen, this

4    isn't in the first six months or the first 12 months of the case;

11:47AM    5    this is -- this case has been going on for five years, or four and

6    a half years.

7            And we have a record in this case, Your Honor, and what

8    the record shows -- and this has been very difficult for The Body

9    Shop to produce this very expensive -- we dealt with Judge Feldman

11:48AM   10    about this.  We've offered to produce this to the plaintiff as

11    soon as he agrees to an appropriate confidentiality order.

12            What that record shows, if those notices go out to shop

13    managers throughout the country, it is going to be a notice that

14    is far too broad because from 50% to 75% of those shop managers we

11:48AM   15    know from their official records in The Body Shop supervised two

16    or more people 90 or 100% of the time.  That is what this chart

17    shows, and that's what the other evidence shows.

18            So this is a company in which certain shop members, Your

19    Honor, may not have supervised as many as 80 hours per week and

11:48AM   20    that will go to the jury to determine whether or not that was --

21    that qualifies under the statute.

22            But we know that many, if not most of the shop members

23    in this company, supervise well towards 100% of the time, they had

24    more than 80 hours per week.  And, therefore, we are going to be

11:49AM   25    spending money and sending out notices to a lot of people who

1   don't qualify.

2        And what Mr. Solomon's record in this case shows is that

3   he has been focusing on part of the case, not the whole case.  He

4   said in his initial motion that he thought the liability was in

11:49AM  5   the smaller shops or the smaller volume shops, and you can see

6   that in the pleadings in this case.

7        And he talks about the second prong, Your Honor, on

8   primary duty.  There is not one mention in the original motion for

9   certification filed by Mr. Solomon.  That issue is not mentioned

11:49AM  10  once.

11       And Your Honor can look through that motion that was

12  filed initially in 2005.  He mentions the issue, the decisive

13  issue, being whether or not you supervise two or more employees

14  and he says the class definition can only be those people who

11:50AM  15  engaged in sales duties while supervising less than two full-time

16  employees.  Therefore, it's definitional.

17       And what we are saying is we accept that definition on

18  its face, and we have shown that it's far too broad because many

19  people won't qualify under that standard.

11:50AM  20       THE COURT: All right, thank you.

21       Mr. Solomon, conclude.

22       MR. SOLOMON: Thank you, Your Honor.  This Court has

23  already rejected any efforts to consider the application for

24  notice as a stage 2 motion.  In other words, the Court has said in

11:50AM  25  this case and in others that to consider any discovery prior to

1    the motion for notice is not appropriate.

2            It was basically raised in the summary judgment issue,

3    and we would continue to assert that it is not appropriate to

4    engage in a stage 2 certification today prior to there being any

11:50AM    5    discovery.

6            As to whether we've raised both prongs of the exemption,

7    in our first papers I'll point to point one on page 1 of our

8    motion, which says requiring the issuance of an expedited notice

9    to all current and former employees whose job duties, including

11:51AM    10    performing sales functions while supervising fewer than two

11    employees.

12            Clearly we did argue that the primary duty at issue, and

13    defendant has used that as an affirmative defense, and that's the

14    scope of the people who should receive notice.

11:51AM    15            The scope of people who should receive notice -- I want

16    to return to that quickly and I'll sum up -- and that is any shop

17    manager who worked at The Body Shop in the time period that

18    Ms. Rubery was a shop manager is the scope of what we're looking

19    at.  Those are shop managers who are similarly situated to her.

11:51AM    20            The temporal proximity would continue beyond even her

21    reclassification.  And as other court cases, court decisions in

22    the Second Circuit have held, is that to try and limit the scope

23    in time or as to some definition set by defendant is not

24    appropriate.

11:52AM    25            And that you can look at the *Anglada vs. Linens 'N*

1    *Things* decision, it's a May 29, 2007 Westlaw cite, which is 2007

2    Westlaw 1552511.  And just quickly to paraphrase, basically it

3    says that stage 1 is not the time to undertake an argument against

4    inclusion of certain class members.  And, additionally, it's

11:52AM  5    prudent to certify a broader class of the temporal scope of the

6    plaintiffs.

7            And the appropriate time for the Court to decide, well,

8    did we have too many people in our net, then we can appropriately

9    decide that, then the defendant would have -- as the plaintiffs

11:53AM  10   would -- discovery to decide are these people who are appropriate

11   to this class or not?

12           Therefore, we would suggest that the notice should issue

13   as per our request in the notice and that it include all shop

14   managers as well prior and after her reclassification.

11:53AM  15   And another cite I would just quickly like to give to

16   the Court is -- which is cited in our papers, it's the *Realite vs.*

17   *Ark* decision, and there the Court said that basically the

18   admission as to the reclass of some employees is a primary --

19   evidence of a primary finding that others may similarly have been

11:53AM  20   subject to violations and are entitled to notice .

21           Thank you, Your Honor.

22           THE COURT: All right, thank you both.  Interesting case;

23   as always, well-argued.  I don't know if either of you were

24   intending to order the transcript of the argument?

11:54AM  25   MR. SOLOMON: We usually do.  I don't think we need it

1    immediately if the Court is busy with the trial, the criminal

2    trial, but we would request a copy of the transcript.

3              THE COURT: Well, make your arrangements with Ms. Macri;

4    it might assist the Court, but -- so I'll assume one or more of

11:54AM    5    you may order it, and I'll reserve, get you a decision as quickly

6    as I can.  I know this has been pending a bit, and we'll turn to

7    it as soon as we can.

8              MR. SOLOMON: Thank you, Your Honor.  I have the cases I

9    cited as well.  I can hand those to you now if it will be helpful

11:54AM    10    to the Court?

11              THE COURT: Well, if they're in your papers, I don't need

12    them.  If they're not --

13              MR. SOLOMON: There may have been one or two that were

14    not cited.

11:54AM    15              THE COURT: You can leave them with Ms. Rand.

16              MR. SOLOMON:  Thank you, Your Honor.

17              MR. SCANLON:  Thank you, Your Honor.

18              (WHEREUPON, the proceedings adjourned at 11:54 a.m.)

19                          *    *    *

20                    CERTIFICATE OF REPORTER

21        I certify that the foregoing is a correct transcript of the

22    record of proceedings in the above-entitled matter.

23

24    /s Christi A. Macri

25    Christi A. Macri, FAPR-RMR-CRR-CRI
      Official Court Reporter